72 S.W.3d 725 (2002)
In the Matter of D.S.S., A Juvenile.
No. 10-01-178-CV.
Court of Appeals of Texas, Waco.
March 6, 2002.
*726 Dick Turner, Cleburne, for appellant.
Bill Moore, Johnson County Atty., Curt Crum, Johnson County Asst. County Atty., Cleburne, for appellee.
Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

OPINION
REX D. DAVIS, Chief Justice.
The court below sitting as a juvenile court found that D.S.S. had engaged in delinquent conduct by committing the offense of aggravated sexual assault and placed him on probation for eighteen months. The State subsequently filed a motion to modify this disposition. The court heard the motion, modified the disposition, and committed D.S.S. to the Texas Youth Commission without a determinate sentence. D.S.S. claims in two points that the court abused its discretion in modifying his disposition because: (1) the State failed to establish the chain of custody for a urinalysis report it relied upon to show that he had used marihuana and failed to provide him a copy of the report before the hearing; and (2) the State failed to present sufficient evidence to prove that he had possessed marihuana on another occasion.
D.S.S. contends in his first point that the court abused its discretion by admitting in evidence a urinalysis report relied upon by the State to prove he violated the conditions of his probation by using marihuana. D.S.S. argues that the court should not have admitted this report because the State failed to establish the chain of custody and failed to provide him a copy of the report before the hearing under the requirements of section 54.05(e) of the Juvenile Justice Code. See Tex. Fam. Code. Ann. § 54.05(e) (Vernon Supp.2002).
The State responds that D.S.S. has not properly preserved his chain-of-custody complaint for our review, that it adequately established the chain of custody for the urinalysis report, and that section 54.05(e) does not apply to the report.
Condition six of D.S.S.'s probation order prohibited him from using or possessing alcohol, marihuana, and other illegal substances. The State alleged in its motion to modify that he violated this condition when he tested positive for marihuana on or about September 20, 2000. To prove this allegation, the State called D.S.S.'s probation *727 officer Ray Esparza, who testified that D.S.S. provided a urine specimen at Esparza's request on September 20.
Esparza sealed the specimen container with a piece of tape bearing a distinctive bar code. At the same time, he completed a "Chain of Custody Form" which requires that the donor's name be printed in two places and that the donor sign in two places. Esparza printed the name "Jason Sanders" in the first blank in which the donor's name was to be entered.[1] However, D.S.S.'s signature appears below this entry. In the other spaces, D.S.S. printed and signed his name. The form bears the date September 20, 2000. Esparza's printed name and signature appear in several places on the form as well. The form also contains a bar code with a number corresponding to that which Esparza testified was attached to the specimen container.
Esparza discovered that he had written the wrong name on the chain-of-custody form the next day. He called the laboratory to advise personnel there of the discrepancy. He also completed a notarized statement documenting the error, which he forwarded to the lab.
The State called the lab director to testify about the testing process and its results. The lab director provided papers documenting the chain of custody of the specimen (including Esparza's notarized statement explaining the misnomer on the initial form). He explained how the lab maintains and safeguards specimens to prevent contamination or misidentification. He then testified that two independent tests of D.S.S.'s specimen indicated positive results for the presence of marihuana.
At the conclusion of the lab director's testimony, the State offered four sets of exhibits in evidence: (1) the chain-of-custody form prepared by Esparza; (2) lab records pertaining to the custody and testing of the specimen; (3) the lab results; and (4) the specimen itself. D.S.S. objected to the first three exhibits on the basis that the State had not provided him copies of them before the hearing as required by section 54.05(e). The court overruled these objections. D.S.S. objected to the admission of the specimen on the basis that the State failed to establish the chain of custody.
We review a court's decision to modify a juvenile disposition under an abuse-of-discretion standard. In re M.A.L., 995 S.W.2d 322, 324 (Tex.App.-Waco 1999, no pet.); In re Cockrell, 493 S.W.2d 620, 626 (Tex.Civ.App.-Amarillo 1973, writ ref'd n.r.e.). Because this appeal arises from a proceeding to modify a disposition based on an adjudication of delinquent conduct, we must determine "whether the record shows that the court abused its discretion in finding, by a preponderance of the evidence, a violation of a condition of probation." M.A.L., 995 S.W.2d at 324; accord In re D.R.A., 47 S.W.3d 813, 815 (Tex.App.-Fort Worth 2001, no pet.); Cockrell, 493 S.W.2d at 626; see also Tex. Fam.Code. Ann. § 54.05(f) (Vernon Supp.2002).
D.S.S. objected to the State's proof of chain of custody with respect to only the urine specimen. Thus, he did not properly preserve his chain-of-custody argument with respect to the results of the urinalysis which show that he used marihuana. The State did not have to admit the specimen to prove the results. See Lake v. State, 577 S.W.2d 245, 246 (Tex.Crim.App. [Panel Op.] 1979); Velasquez v. State, 941 S.W.2d 303, 306 (Tex.App.-Corpus Christi 1997, *728 pet. ref'd); Stevens v. State, 900 S.W.2d 348, 352-53 (Tex.App.-Texarkana 1995, pet. ref'd). Accordingly, we conclude that D.S.S.'s chain-of-custody argument is without merit.
Section 54.05(e) of the Juvenile Justice Code provides:
(e) After the hearing on the merits or facts, the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of other witnesses. Prior to the hearing to modify disposition, the court shall provide the attorney for the child with access to all written matter to be considered by the court in deciding whether to modify disposition. The court may order counsel not to reveal items to the child or his parent, guardian, or guardian ad litem if such disclosure would materially harm the treatment and rehabilitation of the child or would substantially decrease the likelihood of receiving information from the same or similar sources in the future.
TEX. FAM.CODE. ANN. § 54.05(e).
According to our research, the Legislature adopted this provision in 1973 when it enacted title 3 of the Family Code. See Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 1, sec. 54.05(e), 1973 Tex. Gen. Laws 1460, 1479 (amended 1979) (current version at Tex. Fam.Code. Ann. § 54.05(e)). The 1973 version of the statute authorized the juvenile court to consider such documents "[a]t the hearing to modify disposition." Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 1, sec. 54.05(e), 1973 Tex. Gen. Laws at 1479 (amended 1979). The 1979 amendment made the statute to read as it currently does. See Act of May 26, 1979, 66th Leg., R.S., ch. 743, § 1, 1979 Tex. Gen. Laws 1829, 1829. Under the present statute the juvenile court may consider such documents only "[a]fter the hearing on the merits or facts." TEX. FAM.CODE. ANN. § 54.05(e).
The Legislature enacted the 1979 amendment concurrently with an amendment to section 54.05(d) to provide for a bifurcated modification hearing in those cases in which the basis for modification is a violation of the probation order. See Act of May 26, 1979, 66th Leg., R.S., ch. 743, § 1, 1979 Tex. Gen. Laws 1829, 1829 (amended 2001) (current version at Tex. Fam.Code. Ann. § 54.05(d) (Vernon Supp. 2002)) (hereinafter, "Tex. Fam.Code. Ann. § 54.05(d)"). The 1979 version of section 54.05(d) applies to D.S.S.'s case. See Act of May 24, 2001, 77th Leg., R.S., ch. 1297, § 72(c), 2001 Tex. Gen. Laws 3142, 3175 (2001 amendment applies only to conduct occurring on or after September 1, 2001). It provides that "the court must hold an adjudication hearing and make an affirmative finding prior to considering any written reports under Subsection (e) of this section." TEX. FAM.CODE. ANN. § 54.05(d).
As explained by commentators, the Legislature enacted the 1979 amendments to enable the juvenile court to consider a social history report prepared by juvenile authorities to aid the court in deciding the appropriate disposition for a juvenile found to have violated the conditions of probation. See Robert O. Dawson, Texas Juvenile Law 222 (5th ed.2000); see also 5 BARRY P. HELFT ET AL., TEXAS CRIMINAL PRACTICE GUIDE § 115.01[3][c] (July 2000); 29 THOMAS S. MORGAN AND HAROLD C. GAITHER, JR., TEXAS PRACTICE: JUVENILE LAW AND PRACTICE § 923, at 527-28 (1999). The plain language of subsections (d) and (e) of the statute both prohibit a juvenile court from considering such documents until after the court has determined whether the juvenile violated a condition of probation. See Tex. Fam.Code. Ann. § 54.05(d), (e); see also In re J.B.S., 696 S.W.2d 223, 225 (Tex.App.-San Antonio 1985, no writ).
*729 Professor Dawson explains the interplay of subsections (d) and (e) thusly:
The obvious purpose of [the 1979] amendment was to require the juvenile court to first decide whether the child violated a probation condition as alleged in the petition and to do so without knowing the possibly prejudicial material in the social history report. Only if the court decides that a violation has been proved may it then consider the social history report in order to decide whether probation should be continued or revoked.
DAWSON, TEXAS JUVENILE LAW at 222.
The State offered the urinalysis report during the initial hearing on the merits of the motion to modify to prove that D.S.S. had violated the conditions of his probation. Section 54.05(e) does not apply to evidence offered during this phase of a modification proceeding. Accordingly, we overrule D.S.S.'s first point.
Because Esparza's testimony and the urinalysis report provide sufficient evidence to support a finding that D.S.S. violated condition six of his probation order, we need not address his second point which challenges the court's finding that he violated a condition of his probation on a different occasion. See D.R.A., 47 S.W.3d at 815; M.A.L., 995 S.W.2d at 324; Cockrell, 493 S.W.2d at 626; see also TEX. FAM.CODE. ANN. § 54.05(f).
We affirm the judgment.
NOTES
[1] The form also bears a machine-printed notation with the name "Jason Sanders" and the bar code number which appears in several places on the form. Apparently, this notation was made later, presumably by the laboratory.