

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00062-CV

## IN THE MATTER OF J.M.E.

From the County Court at Law No. 2, Webb County, Texas
Trial Court No. 2017JV3000176L2
Honorable Victor Villarreal, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Irene Rios, Justice
                 Beth Watkins, Justice

Delivered and Filed: January 8, 2020

AFFIRMED

J.M.E. appeals the juvenile court's order committing him to the Texas Juvenile Justice Department (TJJD) for an indeterminate term, not to exceed his nineteenth birthday. On appeal, J.M.E. argues the juvenile court abused its discretion because less restrictive alternatives were available and commitment to the TJJD violated his Eighth Amendment rights. We affirm the juvenile court's order.

## BACKGROUND

On November 6, 2017, the juvenile court signed an order finding that J.M.E. was a child who engaged in delinquent conduct by committing a felony 3 offense of alien smuggling, a violation of section 20.05 of the Texas Penal Code. The juvenile court placed J.M.E. on probation for fifteen months, with the first four months on intensive supervision probation ("ISP"). He was

placed at the Judge Ricardo Garcia Regional Detention Center ("the Center") and ordered to complete certain services including "CAPS and SCAN counseling, SWK [Southwest Keys Program] after completion of ISP, Cognitive Life Skills at YV [Youth Village]."

On May 30, 2018, J.M.E. was unsuccessfully discharged from the Center because he failed to comply with its requirements. He was detained at the TJJD, but was later transferred to the Webb County Jail after assaulting another juvenile. Since his transfer, he has not been released. On January 12, 2019, the State filed a motion to modify disposition, alleging J.M.E. violated the conditions of his probation because he was unsuccessfully discharged from the Center and failed to complete any of the court-ordered services.

At the hearing on the State's motion to modify, J.M.E. pled true to being unsuccessfully discharged from the Center and failing to complete any of the court-ordered services. The juvenile court also heard testimony from J.M.E.'s probation officer, Officer Pryscilla Castillo, who testified J.M.E. was unsuccessfully discharged from the Center because he did not participate in counseling sessions and initiated fights with other juveniles at the Center. She further testified that J.M.E. could not be placed with his parents after his unsuccessful discharge because they did not provide adequate supervision.

Officer Castillo also testified that J.M.E. had a history of delinquent conduct and substance abuse. She stated that before his current probation, J.M.E. had been referred to the juvenile court ten times and placed on probation twice for nonviolent offenses. She further testified he failed to successfully complete his first probation because he reoffended, and his probation was extended as a result. The record reflects he served that probation concurrently with his instant probation until that case was closed in May of 2018 and he was unsuccessfully discharged from the Center. Officer Castillo also testified that during his previous probations, J.M.E. tested positive multiple

times for THC and once for cocaine and benzodiazepines. His last drug test was November 6, 2017, and he tested positive for THC.

Regarding his behavior, Officer Castillo testified that while at the Webb County Jail, J.M.E. was attending school, receiving good grades, attending CAPS counseling, and receiving SCAN services. She explained that in contrast, while at the Center, he failed to comply with the Center's requirements even after he was given a second chance. She testified she believed it was in J.M.E.'s best interest to be placed at the TJJD rather than a boot camp because even though he may qualify for a boot camp, a structured facility like the TJJD would provide J.M.E. with all the services he needed and the best opportunity to rehabilitate.

At the end of the hearing, the juvenile court found that J.M.E. had violated the terms of his probation and ordered him committed to the TJJD. J.M.E. appeals.

## ANALYSIS

### Standard of Review

A juvenile court has broad discretion to determine a suitable disposition for a juvenile found to have engaged in delinquent conduct, particularly in proceedings involving modification. *In re J.P.*, 136 S.W.3d 629, 633 (Tex. 2004); *In re P.E.C.*, 211 S.W.3d 368, 370 (Tex. App.—San Antonio 2006, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *In re P.E.C.*, 211 S.W.3d at 370. Absent such a showing of abuse of discretion, "we will not disturb the court's modification of a juvenile's disposition." *Id.*

### Applicable Law

When a juvenile has been adjudicated delinquent, the court may modify its disposition to commit the juvenile to a TJJD facility if it finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful condition of probation. TEX. FAM. CODE. ANN.

§ 54.05(f). A plea of true to a violation of probation is "analogous to a judicial confession that justifies the court's finding the violation was committed by a preponderance of the evidence." *In re D.J.R.R.*, No. 04-13-00084-CV, 2013 WL 3874476, at *1 (Tex. App.—San Antonio July 24, 2013, no pet.) (mem. op.) (quoting *In re M.A.L.*, 995 S.W.2d 322, 324 (Tex. App.—Waco 1999, no pet.)). A trial court is not required to exhaust all possible alternatives before sending a juvenile to the TJJD. *Id*. at *2; *In re J.A.M.*, No. 04-07-00489-CV, 2008 WL 723327, at *2 (Tex. App.—San Antonio March 19, 2008, no pet.) (mem. op.).

### *Application*

As a condition of probation, J.M.E. was ordered to complete "CAPS and SCAN counseling, SWK [Southwest Keys Program] after completion of ISP, Cognitive Life Skills at YV [Youth Village]." J.M.E. pled true to violating this condition of his probation. Based on J.M.E.'s plea of true, the juvenile court was justified in modifying the disposition from probation to confinement in a TJJD facility. *See In re D.J.R.R.*, 2013 WL 3874476, at *1.

J.M.E. argues the juvenile court abused its discretion because less restrictive alternatives were available, and because he was currently complying with the juvenile court's order by attending CAPS counseling and SCAN services at the Webb County Jail. However, the juvenile court heard evidence that J.M.E. had a history of delinquent conduct—he had been on probation once previously and failed to successfully complete that probation. As to his current probation, Officer Castillo testified J.M.E. was unsuccessfully discharged even after he was given a second chance to comply with the Center's requirements. Officer Castillo also testified placement with his parents or at a boot camp was not feasible, and instead a structured facility like the TJJD would provide J.M.E. with an opportunity to rehabilitate because it offered a variety of services, including behavioral, family counseling, anger management, responsibility, substance abuse, mental health, and educational programs. Before making its determination to send J.M.E. to the TJJD, the

juvenile court noted that although boot camps offered some of these services, "no boot camp has all of these services." The record therefore reflects the juvenile court considered less restrictive alternatives and agreed with Officer Castillo's recommendation that J.M.E. should be committed to the TJJD. We conclude the juvenile court did not abuse its discretion and therefore overrule J.M.E.'s first issue. *See id*. at *2; *In re J.A.M.*, 2008 WL 723327, at *2.

### Eighth Amendment

J.M.E. also argues the juvenile court violated his Eighth Amendment right to be free from cruel and unusual punishment because his modified disposition is grossly disproportionate to the offense for which he was placed on probation. However, J.M.E. did not preserve this complaint for appellate review.

To preserve a complaint for appellate review, a defendant must present the trial court with a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a). This preservation rule applies to a complaint that a sentence is grossly disproportionate and constitutes cruel and unusual punishment. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding complaint of cruel and unusual punishment under Texas Constitution was waived because defendant failed to object in trial court).

Here, J.M.E. did not raise his complaint about the constitutionality of his disposition in the juvenile court when that court modified his disposition or in a motion for new trial. By failing to make an objection in the juvenile court, J.M.E. forfeited his complaint on appeal. *See* TEX. R. APP. P. 33.1(a); *see also Rhoades*, 934 S.W.2d at 120; *In the Matter of P.D.W.*, No. 12-17-00197-CV, 2017 WL 6350143, at *1 (Tex. App.—Tyler Dec. 13, 2017) (mem. op.) (holding appellant forfeited his complaint that trial court violated his Eighth Amendment rights when it ordered him committed to TJJD by failing to present it to the trial court). We therefore overrule J.M.E.'s final issue.

**CONCLUSION**

Having overruled each of J.M.E.'s issues, we affirm the juvenile court's order committing J.M.E. to the TJJD.

Beth Watkins, Justice